RAFAEL SAURÍ, Plaintiff and Appellee, *v.* MARÍA ECHEVARRÍA SUBIRÁ ET AL., Defendants and Appellants.

No. 6915. Argued December 3, 1936.—Decided March 5, 1937.

*Henry G. Molina* and *Gustavo Rodríguez* for appellants. *Leopoldo Tormes García* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

On January 9, 1929, the plaintiff and appellee brought, in the District Court of Ponce, an action to establish boundaries (*deslinde*) and for revendication and denial of servitude, alleging six causes of action. At the trial the plaintiff moved for leave to file an amended complaint which he attached to the motion. To avoid a continuance of the trial, the court refused to grant such leave, but stated that later on it would permit an amendment to the complaint to conform it with the evidence.

By stipulation of both parties the court took a view of the premises before the introduction of any evidence. At the close of plaintiff's evidence, the defendants moved for a dismissal of the first cause of action of the complaint for want of evidence to support the same, and as the plaintiff consented thereto, the court sustained such motion. Afterwards, the original complaint was amended to conform it to the evidence. In this amended complaint it is alleged as a second cause of action that the properties called "Santa Cruz," and "Isabela," respectively belonging to the plaintiff and to the defendants, are adjoining properties; that the sugar cane plantation called "Salichs," pertaining to the Isabela property, is bound on the west by a private road belonging to the Santa Cruz property, owned by the plaintiff, and that the boundary is fixed by the eastern edge of a ditch which separates both properties on that side. As a third cause of action, it is alleged that the said Salichs plantation

and the plantation known as *"Trapiche de Bueyes,"* which form part of the Isabela property, are separated on the south from the lands of the Santa Cruz property by a ditch running from east to west and that the boundary on that side is the northern edge of said ditch. As a fourth cause of action, it is alleged that the plantation called *"Pan de Azúcar,"* pertaining to the said Isabela property, owned by the defendant, is separated on the west, from the lands of the Santa Cruz property belonging to the plaintiff, by a ditch running north to south, and that the boundary on that side is the eastern edge of said ditch. As a fifth cause of action, it is alleged that at the place where the Bucaná municipal road reaches a corner of the Santa Cruz estate, owned by the plaintiff, it turns to the right in a southwesterly direction and crosses the Bucaná River over a wooden bridge, and ends in the sea, and that the defendants, maliciously confusing that municipal road with a private road belonging to the Santa Cruz property, and claiming that the latter is a continuation or part of the former, are using and withholding the said road of the Santa Cruz property for the use of the Isabela property and intend to continue using the same as a right of way.

The defendants-appellants answered the complaint and admitted some facts while denying others, and alleged new matter in opposition to the complaint setting up as an additional defense that they, and their predecessors in interest, now hold and have heretofore held possession of the parcels of land described in the second, third, and fourth causes of action, in good faith, and with just title, under claim of ownership, uninterruptedly for more than 30 years, for which reason those parcels now belong to them by virtue of the acquisitive prescription provided for in sections 1858 and 1860 of the Civil Code.

After the case was submitted to the lower court, the latter by a judgment sustained the complaint as to the second, third, fourth, and fifth causes of action. The sixth cause of

action was dismissed because no evidence in support of the same had been presented at the trial. Feeling aggrieved by that judgment, the defendants took an appeal to this court, and they urge, in the first place that the District Court of Ponce erred in finding that the boundary in question between the Isabela and the Santa Cruz properties is constituted by the eastern, northern, and eastern edges, respectively, of the ditches lying along the western and southern boundaries of the Salichs plantation, the southern boundary of the Trapiche de Bueyes, plantation, and the western boundary of the Pan de Azúcar plantation, instead of the western, southern, and western edges, respectively, of said ditches.

The error assigned covers the second, third, and fourth causes of action. Let us examine the evidence adduced by both parties in support of the said allegations:

Julio Torres Troche testified that he had worked as overseer in the Santa Cruz plantation for about seven years (from 1905 to 1911), and in the Isabela plantation for about two years (from 1912 to 1913); that the sugar-cane plantation Salichs, belonging to the estate called *"Hacienda Isabela,"* at the time he was there, was bounded on the west by a road called *"La Gran Calle de Santa Cruz"* belonging to the estate known by that name; that between said road and the Isabela property there was a ditch running from north to south; that along the eastern side of said ditch there was a fence; that today there remain of said fence only the trees which originally were the live spikes of the fence; that said ditch was used for drainage of the Santa Cruz estate, and that it was cleaned by the owners of that estate. He also stated that the said Salichs plantation was separated from the Santa Cruz plantation on the south by a drainage ditch running from east to west; that over the northern edge of said ditch there was a fence. Lastly he testified that to the west of the Pan de Azúcar plantation, pertaining to Hacienda Isabela, and separating it from the Santa Cruz property, there was a ditch running from north

to south, and that there was a broken fence on the eastern side of said ditch.

Julio Ribas Salguero testified that his father was a sub-lessee of the Isabela property during the years 1906 to 1910; that the witness personally attended to the cultivation of said property; that his father pointed out to him the boundaries of said property; that his father had learned said boundaries from a representative of the Estate of Oppenheimer; that the Salichs plantation was bounded on the west by a neighborhood road considered as forming part of the Santa Cruz property; that on the eastern edge of a ditch that separated said plantation from the road there was a fence of live spikes and wire. He also stated that the Salichs plantation was separated on the south from the lands of the Santa Cruz property by a ditch; and that along the northern side of the ditch there was a fence partly destroyed. He finally testified that on the western side of the Pan de Azúcar plantation there was also a fence separating it from the Santa Cruz property; that at that place, on the eastern side of said ditch, there was also a partly destroyed fence and some spikes; that those ditches were used for drainage purposes in the Isabela property.

Modesto Quiñones Feliciano testified that his brother, Víctor, had held the Santa Cruz property under a lease, and that he managed it after the year 1894; that afterwards he was road inspector for the Municipality of Ponce, from 1924 to 1928; that between the Santa Cruz and the Isabela properties there was on that side a ditch running from north to south along the Bucaná Road, which then turns towards the east, to the south of the Salichs and Trapiche de Bueyes plantations, and then turns towards the south bordering the Pan de Azúcar plantation; that the visible boundary was a wire fence (*palizada*) with live spikes of *zarcillo, higüera,* and mastic trees, along the eastern, northern, and eastern sides, respectively, of said ditch.

Ramón María Roig stated that he is an engineer and that he had been engaged by Saurí to make a detailed map of the boundaries between the Isabela and Santa Cruz properties and he testified extensively regarding said map which was admitted in evidence and marked "Plaintiff's Exhibit 3."

Antonio Leandri testified on rebuttal that he was an overseer of the Santa Cruz property at the time of the suit; that he had worked before for Oscar Oppenheimer in the Santa Cruz property, first as a laborer and then as an overseer; that he knows the boundaries by the wire fences with live and dead spikes existing there; that along the western boundary of the Salichs plantation there is a fence with *jobo, guásima, higüera,* and *zarcillo* trees on the northern edge of the ditch which separates said plantations from the Santa Cruz property; that then the ditch turns to the east on the south of the said two plantations up to the Pan de Azúcar plantation, and thence it straightens up from north to south and goes towards the sea; that the grass in the ditch was cut by the Santa Cruz laborers.

Such is the evidence for the plaintiff. Let us now examine the evidence introduced by the defendants regarding the matters covered by the first assignment of error.

Oscar Oppenheimer stated that he sold the Santa Cruz property to the plaintiff Saurí; that he has known the boundaries of said property ever since he was a child; that he told Saurí that the boundary between both properties was the western, southern, and western edges of the ditch which separates them; that along the western, southern, western edges of the ditch there was a fence which had been changed by the plaintiff Saurí for his convenience; that on the eastern, northern, eastern edges there are some old *zarcillo* and *guásima* trees, with some wire which indicates that once a fence stood there, but that that was not the boundary; that the cleaning up of the ditch was attended to by the Isabela estate and not by the Santa Cruz property; that before selling to

Saurí he never had any divergencies as to the boundaries with the owners of the Isabela property.

J. Otilio Milán testified that he was manager of the Isabela property from 1912 to 1919, and that between the Salichs plantation and the road there was a ditch; that said ditch was cleaned by the Isabela estate and never by the Santa Cruz property; that the ditch was used for draining the Salichs plantation and the plantation immediately above it; that the ditch south of the Salichs plantation ran in an easterly direction and then turned to the south; that this ditch which runs to the south was used for drainage and usually cleaned by the Isabela estate; that when the Isabela property was conveyed to the appellants, the ditches and the fences were also conveyed.

Hipólito Vázquez testified that he works for the Subirá Succession, and is in charge of the irrigation and ditches; that between the Bucaná Road and the Isabela property there is a ditch and that he has personally cleaned it; that he has never worked in that ditch for the Santa Cruz property; that the Isabela property is bounded on the south of the Salichs plantation by lands of the Santa Cruz estate, and a ditch separates them; that he has worked in that ditch for the Isabela property; that said ditch, after running to the east, turns to the south along the western side of the Pan de Azúcar plantation; that in this ditch at the west of Pan de Azúcar he has worked under hiring by the Isabela estate; that along the eastern edge of the ditch on the west of the Salichs plantation, there was a fence with spikes of mangrove trees, etc.; that on the northern edge of the ditch south of the Salichs plantation there was also a fence; that on the ditch lying west of Pan de Azúcar the fence stands on the eastern, not on the western, side of the ditch.

After a careful study of all this testimony and of the plans and photographs introduced in evidence by both sides, the lower court concluded that the trees standing in a line along the eastern, northern, eastern edges of the respective

ditches that separate the properties, to which the witnesses for both parties refer and which the judge noticed in his view of the premises, were the live spikes, with some wire, of the boundary fence between both properties. The lower court cites the case of *Isales* v. *Maeso et al.,* 16 P.R.R. 752, where it was held that in determining and fixing the boundaries of a property, the dividing line indicated by natural objects must be accepted in preference to such as may result from mathematical calculations, and if there exists as a natural boundary a row of trees which has for a long time been considered as the real boundary line, and a preponderance of the evidence is in favor of that contention, it was not error for the trial court to designate the same as the boundary line between the two properties referred to.

The lower court also held to have been proved, all the facts alleged in the fifth cause of action of the complaint. We shall now examine the evidence introduced by both sides on this question.

J. Torres Troche testified that the Bucaná Road started from the Salichs Villa and in reaching the gate in the *"Gran Calle de la Hacienda Santa Cruz"* (this road was noticed by the judge in the view made by him of the premises), it turned to the right and followed the side of Bucaná River up to Central Constancia and then reached the sea; that in 1905 there was another gate in the *"Gran Calle de la Hacienda Santa Cruz"* further up from the place of the present one, and it had a sign which read "No Trespassing"; that he never heard that the *"Gran Calle"* was a neighborhood road, and that he had orders not to let anybody pass through it without permission of Oscar Oppenheimer.

Julio Ribas Salguero testified that the Bucaná Road reached the principal gate of the Hacienda Santa Cruz; that he thinks that said gate no longer exists; that further on, the road turned off towards the west, where there is a railroad (this railroad was noticed by the judge in inspecting

the premises); that what is called the *"Gran Calle de Santa Cruz"* was not a neighborhood road.

Modesto Quiñones Feliciano testified that when he was Municipal Roads Inspector he had to repair the Bucaná Road, that the road leads to the gate of the Hacienda Santa Cruz; that after reaching said gate the road turns to the right where there is a railroad and from there goes on to the beach; that before reaching the beach there is a wooden bridge in· said road, over the river; that from the point where the Bucaná Road turns to the right the road that goes on towards the south is the one called *"Gran Calle de la Hacienda Santa Cruz."*

Ramón María Roig testified that he is an engineer and that he was engaged by the appellee Saurí to make a plan of the boundaries between both properties. With the plan in his hands he stated that in order to determine the guiding points he made use of the descriptions taken from the registry of property and of certain deeds that the attorney for the appellee gave him; that he made to appear in the map the road that separates the Salichs plantation from the Santa Cruz property as belonging to the latter because from the documents submitted to him it did not appear that the Santa Cruz property was bound on the east by a neighborhood road.

Pedro Clausells testified that he is a surveyor and that he made a plat of the Santa Cruz property more than twenty years ago, when the property belonged to Ana Salomón de Oppenheimer; that in drawing that plat he was helped by the overseer of the property, who showed him the boundaries. The plat was admitted in evidence and marked "Plaintiff's Exhibit 4."

Guillermo Vivas Valdivieso testified on rebuttal that the Bucaná Road begins at the Salichs property, then turns, and goes on to meet the lane which turns towards the Bucaná River; that the road which passes by the Hacienda Isabela does not come near Hacienda Santa Cruz. Afterwards, on cross-examination and with the plan of municipal roads

before him, he stated that the road marked with number 8 in the plan is the Bucaná Road and that it crosses the Oppenheimer property known as "Santa Cruz."

Antonio Leandri testified that he knows the Bucaná Road; that said road starts in the house of Pepito Salichs, reaches the entrance of Santa Cruz, and then turns to the west up to the Ponce Beach; that he received orders from Oscar Oppenheimer not to let anyone pass by the road at the entrance of Hacienda Santa Cruz; that once when he was a laborer he tried to pass and Don Oscar himself forced him to turn back; that afterwards, when he was overseer, there was a gate where there is today an iron gate, at the entrance of the road; that this gate had a padlock and he kept the key; that to pass by that road, it was necessary to ask permission.

The foregoing is the evidence for the plaintiff in support of the fifth cause of action. Let us see what the witnesses for the defendant testified.

Roberto Arroyo Vivas testified that he is the Director of Public Works of the Municipality of Ponce, and as such he has under his custody the official plan of the municipal roads of Ponce. A blueprint of said official plan was admitted in evidence and marked "Defendant's Exhibit A," after being identified by the witness. With the plan in his hands the witness testified that the Bucaná Road is the one marked with number 8, with a dotted line, that is, as a projected road.

Oscar Oppenheimer testified that the Bucaná Road starts at the Salichs Villa and reaches a place where Subirá kept a lever scale, and there it turns to the right (the judge of the lower court, during his inspection of the premises noticed that the lever scale to weigh cane is in the same road through which the railroad passes); that in that place where it turned there was another road going to the Hacienda Santa Cruz; that this was a neighborhood road and through it there was no gate until Saurí bought the property and built one there;

that until the date in which he delivered the Santa Cruz property to the appellee, he had known that road south of the gate as a neighborhood road and not as the *"Gran Calle de Santa Cruz"*; that he had not prohibited passage thereon.

Otilio Milán testified that the Hacienda Isabela is bound by the Bucaná Road which runs from north to south; that further on it crosses the Hacienda Santa Cruz and goes on to the sea; that everybody used the road west of the Salichs plantation; that the Hacienda Isabela used it to transport sugar cane and its employees; that he never saw a gate in the road with a sign prohibiting its use.

Juan Elías Cordero testified that he is a civil engineer; that in the year 1907 he made a plat of the Isabela property at the request of Santiago Oppenheimer (the plat was admitted in evidence and marked "Exhibit E"). With the plat in his hands he stated that the road marked in the plat as "neighborhood road" is the one shown west of plantation number 10; that said neighborhood road comes from north to south; that he called it "neighborhood road" because it was called that way by the laborer who showed him the boundaries; that he does not remember having seen a gate in that road, nor where it started.

Blas C. Silva testified that he acted as Municipal Engineer of Ponce from 1904 to 1910; he acknowledged as his the signature affixed on one of two plans of the municipal roads of Ponce which were exhibited to him and he identified it as a copy in cloth from the original prepared in 1920 (the plan was admitted in evidence and marked "Exhibit G"); with the plan before him, the witness testified that the Bucaná Road is marked in the plan with number 8; that it is shown in the plan as a road in project; that the road has two branches, in one of which there is a railroad track.

Although the lower court considered that the testimonial evidence regarding the Bucaná Road was conflicting, it decided the conflict in favor of the plaintiff, basing its deci-

sion mainly on the documentary evidence introduced by both sides.

In its statement of the case and opinion the lower court made the following analysis of said documentary evidence:

"We have before us the 'General Plan of the Hacienda Isabela,' made on April, 1907, by the engineer Mr. J. Elías Cordero (Defendants' Exhibit E).

"In this plan there is shown a road which goes in a north to south direction, marked 'Neighborhood Road.'

"We have in sight the 'General Plan of the Haciendas Isabela, Aguas Prietas, and Consuelo Vallas,' made by the surveyor Mr. Francisco Valls on July 1901, (Plaintiff's Exhibit No. 1).

"In this plan there appear two roads, which form an acute angle. The east to west side of the angle, is marked in the plan as follows: 'Neighborhood Road.' And the other side of said angle, which goes from north to south, is marked in the plan as follows: 'Santa Cruz Road.'

"We also have before us the 'General Plan of the Santa Cruz Settlement,' made on December of 1910 by the engineer Mr. Pedro Clausells (Plaintiff's Exhibit No. 4).

"In said plan, as in the previous one, there appears a road going from east to west, marked with the following words: 'Neighborhood Road.' And another road, making an angle with the previous one and which goes from north to south, with these words: 'Private Road.'

"We also have in sight the 'Plan of Details,' made by the engineer Mr. Ramón M. Roig, dated March 5, 1937 (Plaintiff's Exhibit No. 3).

"In said plan there is shown a road which runs from north to south and then turns from east to west, marked thus: 'Bucaná Municipal Road.' And there appears another road going from north to south, marked thus: 'Gran Calle de la Hacienda Santa Cruz.'

"We also have before us two plans entitled 'General Plan of the Municipal Roads of Ponce.' (Defendants' Exhibit A and G). Exhibit A is signed by J. E. Colón and Exhibit G by Blas C. Silva, both of whom were Directors of Public Works of the Municipality of Ponce.

"In both plans there appears the 'Bucaná' road, marked with number 8, as a road to be constructed, that is, as a road in project. Engineer Blas C. Silva, in his testimony above quoted, stated that 'it is a road in project.'

"Said road plan was approved by the Department of the Interior. (Defendants' Exhibit D).

"As appears from the certificate of the Commissioner of the Interior (Exhibit D), said Bucaná road, designated with 'number 8, was recorded on February 14, 1908.

"And the record of said road was made by virtue of a resolution passed by the Municipal Council of Ponce at a meeting held on January 17, 1908. (Defendants' Exhibit C).

"The testimonial evidence regarding the 'Bucaná' road is conflicting; but defendants' exhibit C, in connection with exhibit D and the exhibits A and G (all of them introduced by the defendants), gives us the best guide to resolve, as we do resolve, the conflict in the evidence in favor of the plaintiff.

"Thus, defendants' exhibit C, literally copied reads as follows:

"'THE MUNICIPAL SECRETARY OF PONCE, PUERTO RICO, CERTIFIES:

"'That the Municipal Council of Ponce, at its regular meeting held on January 17, 1908, unanimously decided to record the "Bucaná" road, as it appears from Item No. 5 of the Minutes of the meeting of said date, set forth at page 254 of the Minute Book of the Municipal Council of Ponce No. 235, which item textually reads as follows:

"'"Item No. 5: A report of the Municipal Engineer regarding the petition of some neighbors of Bucaná, presented to the Council on December 10th last, requesting immediate repairs to the neighborhood road of the ward, was read. The engineer stated that all that was said by the petitioner was true, except what they informed regarding the wooden bridge over the Bucaná River, as to which he did not know whether or not the same had been constructed with the permission of the Commissioner of the Interior, and he added that, as in the case of the San Antón Road, the former road should be recorded, and from $80 to $100 should be appropriated to repair it. The Council unanimously agreed to record the Bucaná Road as a municipal road and to set aside for its repair the sum of $80, and the Auditor's Department agreed with the Department of Public Works to make the corresponding transfer."

"'And to be delivered to Doña María Echevarría de Subirá, at her request, and after paying the corresponding fees, I issue these presents, which I sign and seal in the city of Ponce, Puerto Rico, this 18th day of December 1926. (Signed) H. Vélez Bajandas Municipal Secretary.'

"As appears from the above transcribed certificate, said neighborhood road of Bucaná had a wooden bridge over the Bucaná River.

84

"Therefore, the neighborhood road of Bucaná which was recorded under number 8 in the Department of the Interior must pass over the Bucaná River.

"Let us consider now the plans of the neighborhood roads introduced in evidence by the defendants themselves. (Exhibits A and G.)

"In both plans the Bucaná Road appears marked with the number 8 and as a projected road, with two branches.

"One of said branches, which is the Gran Calle de la Hacienda Santa Cruz, runs from north to south and does not cross the Bucaná River. (See the two road plans above mentioned.)

"The other branch runs from east to west and it does cross the Bucaná River. (See the said plans.)

"The court finds, beyond a reasonable doubt, that the neighborhood road of Bucaná is the one which passes over the Bucaná River, that is, the one described in paragraph 2 of the fifth cause of action of the last amended complaint.

"The court declares that each and everyone of the facts alleged in the fifth cause of action of the complaint have been satisfactorily **proved.".**

From the foregoing facts it appears that, although there was a conflict in the evidence, the same was decided by the lower court in favor of the plaintiff and appellee, since it considered as established by a preponderance of the evidence: that the boundary between the properties involved in this suit is formed by the eastern, northern, eastern edges and not the western, southern, western edges of the ditches which separate said properties, for which reason, as the plaintiff and appellee was the owner of said ditches, he had a right to revendicate them; that the municipal road of Bucaná, after reaching a corner west of the Hacienda Santa Cruz, belonging to the plaintiff and appellee, turns to the right (towards the west), passes the Bucaná River over a bridge, and ends in the Ponce beach, and it does not go straight to the south to enter and cross the Santa Cruz property up to the Caribbean Sea; and that the road called *"La Gran Calle de Santa Cruz"* is a private road belonging to the Santa Cruz property, and not a prolongation of the Bucaná Road. As there

is nothing in the record to show passion, prejudice or bias, or manifest error on the part of the trial court in weighing the evidence and in deciding the conflict in the same in favor of the plaintiff, this court does not feel justified in modifying the judgment appealed from.

Lastly, it is urged that the lower court erred in deciding that the defendants had not acquired any title to the strips of land or ditches in controversy by acquisitive prescription and that the defendants' claim was barred by prescription under section 1857 of the Civil Code.

The appellants say that the evidence shows that they, together with their predecessors in interest have held possession of the ditches in controversy for more than 10 years prior to the filing of the present complaint, in good faith and under a just title, having possessed them peacefully and under claim of ownership as a part of the Isabela property belonging to them, up to the time when the plaintiff bought the Santa Cruz property. They further say that the evidence introduced by them shows that this possession had existed for more than forty years.

Not every kind of possession produces prescription nor has the necessary force to overcome the legitimate rights of ownership, by vesting the latter in a person other than the true owner. In order to produce the ordinary prescription, the possession must be civil and exercised under claim of ownership, openly, peacefully, and uninterruptedly for the period provided by law. *The Roman Catholic Church* v. *The People,* 11 P.R.R. 451; *Rivera et al.* v. *Juncos Central, Co.,* 31 P.R.R. 252. However, the quiet and peaceful possession for the time provided by law is not sufficient in itself since good faith and a just title are also required. *Ex parte Tapia,* 6 P.R.R. 246; *Ex parte Loubriel,* 6 P.R.R. 106; *Picart* v. *De León,* 22 P.R.R. 553.

In the case of *Alvarez* v. *Avila,* 40 P.R.R. 501, the plaintiff sought to recover a small parcel of land, which she alleged formed part of a tract belonging to her and adjoining the

town limits of the Municipality of Quebradillas. The defendant set up the defense that he had been in possession of said parcel for 22 years, under a grant made to him by its owner, the Municipality of Quebradillas. The court rendered judgment for the plaintiff, and on appeal the defendant insisted that he had shown at the trial that he had been in possession of the parcel in question since 1907.

This court, in affirming the judgment, held that where the possessor of a tract of land under a just title oversteps the true boundaries thereof and encroaches upon another's property, which he occupies for a period of 22 years, the possession of the additional land thus occupied not being under a just title as required by section 1857 of the Civil Code, the said period is insufficient to establish ownership of the invaded land by ordinary prescription.

In the instant case, the possession of the ditches in controversy by the appellants can not produce the ordinary prescription, in accordance with the doctrine established in the said case, as from the evidence it clearly appears that said appellants did overstep the boundaries of their property notwithstanding the fact that when they bought it there were along the eastern, northern, and eastern edges of the ditches the live spikes of an old fence.

Nor can the possession exercised by appellant serve as a basis for the defense of extraordinary prescription set up by them, as it would have been necessary for said appellants to prove that they had possessed said ditches at least for 30 years. Section 1859 of the Civil Code.

We agree with the lower court that it has been satisfactorily proved, by the testimony of the witness Julio Ribas Salguero, who during the years 1906 to 1910 was in charge of the cultivation of the Isabela property belonging to the appellants, that up to the year 1910 there was a wire fence all along the eastern, northern, and eastern edges of the ditches in controversy, and that said fence was the boundary

between the property of the appellants and that of the appellee.

. In these circumstances, the original complaint herein having been filed on January 9, 1929, the period of nineteen years which was elapsed is not sufficient to convert the possession of the appellants into ownership by virtue of the extraordinary prescription.

The judgment appealed from must be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.